UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONDERSHARE TECHNOLOGY GROUP CO., LTD., et al., | Case No.  25-cv-07322-JSC |
| Plaintiffs, | **ORDER RE: PLAINTIFFS' EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| SUPERACE SOFTWARE TECHNOLOGY CO., LTD, et al., | |
| Defendants. | |

On August 29, 2025, Wondershare Technology Group Co., Ltd. and Wondershare Technology (Hunan) Co., Ltd. (collectively, "Wondershare") sued Superace Software Technology Co., Ltd. and Hongkong Superace Software Technology Co., Limited (collectively, "Superace") alleging "Superace has engaged in a campaign of false and misleading comparative advertising designed to mislead consumers, discredit Wondershare's products, and divert business opportunities."  (Dkt. No. 1 ¶ 1.)  On September 15, 2025, Wondershare moved for a temporary restraining order ("TRO").  Wondershare seeks an ex parte TRO requiring Superace to (1) remove false and misleading comparative advertising; (2) take reasonable steps to neutralize residual dissemination of the statements; and (3) refrain from publishing further misleading statements. (Dkt. No. 15 at 2.)  Wondershare also seeks an ex parte TRO directing PayPal, Inc. to freeze Superace's accounts.  (*Id.*)  In addition, Wondershare asks the Court to authorize alternative service of process.  Having carefully considered the submissions, the Court DENIES without prejudice Wondershare's request to issue an ex parte TRO and DENIES without prejudice Wondershare's request to authorize alternative service of process.

## I.    EX PARTE TRO

Wondershare argues "a narrowly tailored *ex parte* TRO is necessary" in this case to halt

United States District Court
Northern District of California

1  dissemination of misleading claims, mitigate their lingering availability, and maintain the

2  availability of funds should Wondershare prevail.  (Dkt. No. 15-1 at 12-13.)  The Court need not

3  address whether Wondershare is entitled to this injunctive relief because Wondershare has not

4  made the threshold showing that proceeding ex parte is appropriate.  "[C]ourts have recognized a

5  very narrow band of cases in which ex parte orders are proper because notice to the defendant

6  would render fruitless the further prosecution of the action."  *Reno Air Racing Ass'n., Inc. v.*

7  *McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (cleaned up).  Such cases include situations when

8  "an alleged infringer is likely to dispose of the infringing goods before the hearing."  *Id.* (citation

9  omitted).  In this situation, the plaintiff "must show that defendants would have disregarded a

10  direct court order and disposed of the goods within the time it would take for a hearing . . .  [and]

11  must support such assertions by showing that the adverse party has a history of disposing of

12  evidence or violating court orders or that persons similar to the adverse party have such a history."

13  *Id.* (citation omitted).

14  Wondershare has not made the requisite showing here.  Wondershare merely offers the

15  general observation that "[p]roceeding ex parte is warranted where advance notice would likely

16  enable a defendant to frustrate the Court's ability to grant effective relief, for example, by

17  removing or modifying online materials, destroying evidence, or dissipating assets."  (Dkt. No.

18  15-1 at 12.)  But Wondershare does not assert that risk is present here.  Nor does Wondershare

19  present evidence Superace previously violated court orders or disposed of evidence, as required by

20  Ninth Circuit precedent.  To the contrary, in response to the demand letter Wondershare sent on

21  September 1, 2025, Superace responded it "has taken immediate action upon reading

22  [Wondershare's] message, and the comparison webpage in question (along with any related

23  descriptions or promotional materials) has now been removed from all of our platforms."  (Dkt.

24  No. 16-2 at 4.)  So, as the record now stands, Superace did not dispose of evidence but instead

25  took measures to address Wondershare's concerns.  Wondershare contends Superace's response

26  was insufficient and its assurances false because Superace continues to host additional comparison

27  content.  (Dkt. No. 15-1 at 8.)  This issue will be litigated in due course, but it does not justify the

28  extraordinary remedy of an ex parte proceeding.

1    Moreover, Wondershare's concern that advance notice will enable Superace to destroy

2    evidence is belied by the fact that Wondershare already provided Superace notice of this litigation.

3    In the demand letter sent on September 1, 2025, Plaintiffs' counsel informed Superace of the

4    present lawsuit and the possibility of seeking emergency relief:

5             Pending Litigation. Please be advised that on August 29, 2025,
         Plaintiffs filed a complaint in the U.S. District Court for the Northern
6             District of California, Case No. 3:25-cv-7322, asserting claims under
         15 U.S.C. § 1125(a) and related state law. Absent full compliance by
7             the Deadline, we will promptly seek emergency injunctive relief.

8    (Dkt. No. 16-1 at 5.)  Wondershare responded to the demand letter on September 4, 2025.  (Dkt.

9    No. 16-2 at 4.)  Thus, since at least September 4, 2025, Wondershare has had the "advance notice"

10   Plaintiffs contend will "frustrate the Court's ability to grant effective relief."  (Dkt. No. 15-1 at

11   12.)  So, the Court DENIES without prejudice Wondershare's request to issue an ex parte TRO.

12   **II.      SERVICE**

13   The Court also DENIES without prejudice Wondershare's request for alternative service

14   by electronic mail.  The complaint alleges Defendant Superace Software is organized under the

15   laws of the People's Republic of China with its principal place of business in China.  (Dkt. No. 1 ¶

16   8.)  And Defendant Hong Kong Superace Software Technology is organized under the laws of the

17   Hong Kong Special Administrative Region of the People's Republic of China with its principal

18   place of business in Hong Kong, China.  (*Id.* ¶ 9.)  "The United States and China are both parties

19   to the Hague Service Convention, a multilateral treaty whose purpose is to simplify, standardize,

20   and generally improve the process of serving documents abroad."  *Facebook, Inc. v. 9 Xiu*

21   *Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020) (citation omitted).

22   Wondershare, citing *Facebook*, asserts "courts in this District have permitted email service

23   on Chinese defendants."  (Dkt. No. 15-1 at 24.)  In fact, the *Facebook* court determined "under the

24   [Hague] Convention, service by e-mail on defendants in China [was] prohibited."  *Id.* at 988.  The

25   court explained that because email service is not among the approved methods of service in the

26   Convention, to "permit service by e-mail would bypass the means of service set forth in

27   Convention."  *Id.* at 984.  As Facebook did not "assert[] that an exception to the Hague Service

28   Convention [was] applicable," the court denied Facebook's motion for an order authorizing

United States District Court
Northern District of California

service by email.  *Id.* at 979, 988.

So, Wondershare's legal authority does not support the relief it requests.  And even though district courts are split on whether email service on foreign defendants is permissible, *see, e.g.*, *Permissibility of Effectuating Service of Process by Email Between Parties to Hague Convention of Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 14 A.L.R. Fed. 3d Art. 8 (2016), Wondershare does not provide any analysis or argument as to why the decisions permitting email service correctly interpreted the Hague Service Convention, Federal Rules of Civil Procedure, and binding authority.  Nor does Wondershare argue any exception to the Hague Convention applies in this case.  Because Wondershare does not establish alternative service of process is proper, the Court DENIES without prejudice its request to serve Superace by email.

## CONCLUSION

For the reasons stated above, the Court DENIES without prejudice Wondershare's request to issue an ex parte TRO and DENIES without prejudice Wondershare's request to authorize alternative service by electronic mail.

This Order disposes of Docket No. 15.

**IT IS SO ORDERED.**

Dated: September 15, 2025

JACQUELINE SCOTT CORLEY
United States District Judge