UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONDERSHARE TECHNOLOGY GROUP CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERACE SOFTWARE TECHNOLOGY CO., LTD, et al.,<br><br>Defendants. | Case No. 25-cv-07322-JSC<br><br>**ORDER RE: MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 38, 39 |

Before the Court are Defendants' motions to dismiss Plaintiffs' complaint. (Dkt. Nos. 38, 39.)[1] Plaintiffs and Defendants are companies who offer competing PDF software products. Plaintiffs allege various federal and California state claims for false advertising and unfair competition. Defendants move to dismiss Plaintiffs' complaint in its entirety on the grounds of forum non conveniens, lack of personal and subject matter jurisdiction, insufficient service of process, and failure to state a claim.

After carefully considering the arguments and briefing submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Defendants' motion, and DISMISSES Plaintiffs' complaint in its entirety under the doctrine of forum non conveniens.[2] Defendants have met their burden of showing China is an adequate forum, and the public and private factors strongly counsel in favor of dismissal. Defendants' evidence shows China's false advertising and unfair competition laws give Plaintiffs a potential avenue for redress. Defendants are also amenable to suit and subject to jurisdiction in China. Additionally, there is little public or

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] The Court will not address Defendants' remaining arguments, as forum non conveniens is a sufficient basis to dismiss Plaintiffs' complaint.

private interest in litigating in Plaintiffs' chosen forum because none of the parties are United States residents; Defendants' software is used globally; Defendants have not purposely directed activities towards the U.S. market; and neither Defendant has employees, executives, offices, or assets in the United States.

## BACKGROUND

### A. The Parties and the Complaint's Allegations

Plaintiffs Wondershare Technology Group Co. and Wondershare Technology (Hunan) Co., as well as Defendant Superace Technology Co. ("Shanghai Superace"), are companies "organized under the laws of the People's Republic of China," each with a principal place of business in China. (Dkt. No. 1 ¶¶ 6-8.) The other Defendant, Hongkong Superace Software Technology Co. ("Hong Kong Superace"), "is a company organized under the laws of … Hong Kong," with a principal place of business in Hong Kong. (*Id.* ¶ 9.)

Plaintiffs market and sell PDFelement, a software application used "to create, edit, convert, and manage PDF files." (*Id.* ¶ 20.) "The software has been adopted by millions of users in more than 200 countries and regions[.]" (*Id.* ¶ 23.) Plaintiffs allege they have a pending trademark application for PDFelement and have "engaged in continuous commercial use of the PDFELEMENT designation in the United States, giving rise to common-law trademark rights and significant goodwill[.]" (*Id.* ¶ 19.)

Defendants "develop[] and market[ a] competing product known as 'UPDF,'" which has similar uses and functions to PDFelement. (*Id.* ¶¶ 25, 31-42.) Plaintiffs allege Defendants "have engaged in an iterative and sustained campaign of false and misleading advertising designed to promote their competing product, UPDF, at the expense of [Plaintiffs'] flagship product, PDFelement." (*Id.* ¶ 31.) Specifically, Plaintiffs claim Defendants "repeatedly edited and republished over time" a page on Defendants' website that compares the two products and misrepresents PDFelement's capabilities, features, and performance metrics. (*Id.* ¶ 31-42.) Plaintiffs also allege Defendants have directed activities towards the United States and California; for example:

Defendants actively market, distribute, and sell their software

> products nationwide through online platforms and app marketplaces, including the Apple App Store and Google Play Store, which are readily accessible to consumers in this District. Their unlawful conduct, including the dissemination of false and misleading comparative charts and accompanying FAQ-style statements, has caused, and continues to cause, injury to Plaintiffs in California.
>
> […]
>
> Defendants operate official accounts on Instagram, TikTok, and X (formerly Twitter), which they use to promote their products to U.S. consumers, including those located in California. In addition,
>
> Defendants published the challenged comparative materials and narrative claims on their website (http://updf.com/), which is hosted and/or mirrored by CloudFlare Inc. in San Francisco, California, thereby tying the false advertising to infrastructure located in this District.

(*Id.* ¶¶ 12-13.)

### B. Defendants' Evidence

Defendants' evidence contextualizes and rebuts Plaintiffs' allegations. Defendants do not dispute the parties' citizenship or Plaintiffs' allegations the UPDF product, website, and advertising are accessible in the United States through the internet. (*See generally* Dkt. Nos. 38, 39.) Defendants attest, though, they are "distinct entities" with "separate ownership" and do not control each other's employees. (Dkt. No. 38-1 ¶ 7; Dkt. No. 39-14 ¶ 6.) Additionally, Defendants clarify UPDF is a product of Shanghai Superace, not Hong Kong Superace: the latter "did not in any way develop, operate, control, manage, or direct" the updf.com website, the website's contents, or the UPDF application. (Dkt. No. 39-14 ¶¶ 6, 7.) Additionally, UPDF users live and work across "236 countries and regions," with "less than 6%" of users being in the United States. (Dkt. No. 38-1 ¶ 11.) The updf.com website, too, "is available globally and in countless languages." (*Id.* ¶ 12.) Defendants also explain, with hyperlinks to CloudFlare's website, the technical process behind how CloudFlare's servers host the updf.com website:

> The website https://updf.com is not deployed in California. Shanghai Superace subscribes only to CloudFlare's Business Plan, using only its Content Delivery Network ("CDN") service. Shanghai Superace did not purchase any server hosting or mirroring services from CloudFlare.
>
> When purchasing CDN services, no specific region was designated. When users access the website, the CloudFlare system automatically selects the nearest server node, rather than consistently routing

3

> through any specific California, U.S. or international server.
>
> In the simplest terms, Cloudflare provides services (such as CDN) that make websites respond more quickly to user requests by shuttling information through servers located closer to the user. This is true no matter where in the world the user may be located. Cloudflare serves 330 cities in 125+ countries.

(*Id.* ¶¶ 8-10.) Finally, as for both Defendants, "nearly all" of their internal documents are in Chinese language; "[v]ery few" employees speak English; and neither company has physical locations, employees, executives, bank accounts, real property, or assets in the United States. (*Id.* ¶ 4; Dkt. No. 39-14 ¶ 9.) Plaintiffs do not object to or otherwise contradict Defendants' evidence. (*See generally* Dkt. Nos. 41, 42.)

**DISCUSSION**

This Court has discretion to dismiss a lawsuit under the doctrine of forum non conveniens. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 257 (1981). "In dismissing an action on forum non conveniens grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).

**A. China is An Adequate Alternative Forum**

It is Defendants' burden to show there is an adequate alternative forum for this dispute. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983). "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n.22 (cleaned up). "A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress." *Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*, 1 F.3d 947, 949 (9th Cir. 1993) (internal citation omitted). Put another way, "a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." *Lueck,* 236 F.3d at 1144.

Defendants have met their burden here. Defendants assert they are amenable to process in China. (Dkt. No. 38-14 ¶ 11; Dkt. No. 39 at 8; Dkt. No. 39-14 ¶ 11.) And Chinese laws impose various forms of liability for false advertising, commercial disparagement, and unfair competition.

(Dkt. No. 38-9 ¶¶ 4-17; *see* Dkt. Nos. 38-10, 38-11, 38-12, 38-13.) So, China provides "some potential avenue for redress." *Ceramic Corp.*, 1 F.3d at 949. Plaintiffs have even sued Defendant Shanghai Superace in Chinese courts at least three times. (Dkt. No. 38-1 ¶¶ 23-25; *see generally* Dkt. Nos. 38-6 (translated civil judgment from Chinese court) 38-7 (same), 38-8 (same).) Plaintiffs retort those lawsuits were contract disputes, not false advertising suits. (Dkt. No. 41 at 10.) But all three suits reached conclusions on the merits, which at a minimum shows the parties are amenable to suit in China and "are subject to the jurisdiction of the courts in China." (Dkt. No. 38-1 ¶¶ 23-25; *see generally* Dkt. Nos. 38-6, 38-7, 38-8.) Ordinarily, amenability to suit in a foreign forum is enough to satisfy forum non conveniens. *See Piper Aircraft*, 454 U.S. at 255 n.22; *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).

Plaintiffs' argument Chinese courts do not provide an adequate remedy for disputes regarding "U.S. commercial activity and U.S. market effects" (Dkt. No. 41 at 11) is unavailing. Plaintiffs offer no evidence of China's laws or courts, and do not explain why a Chinese court would be unable to remedy harms felt in the United States. (*See id.* at 10-11, Dkt. No. 42 at 6-7.) There are no allegations Defendants' agents visited the United States to conduct commercial activity; all of Defendants' challenged conduct amounts to content on one website. (*See* Dkt. No. 1 ¶¶ 12, 31-42.) This website "is available globally and in countless languages," which suggests Defendants did not target a U.S. audience. (Dkt. No. 38-1 ¶ 11.) And whoever made the challenged content did not do so inside the United States because all of Defendants' physical locations, employees, and executives are in China and Hong Kong. (*Id.* ¶ 4; Dkt. No. 39-14 ¶ 9.) So, Plaintiffs have not refuted Defendants' showing that China is an adequate forum.

Additionally, Plaintiffs cite two district court cases, characterizing them as skeptical that China is an adequate forum, but neither supports Plaintiffs' position. One case held China *was* an adequate alternative forum, even when the moving defendant "cite[d] no Chinese law that would govern" one of the plaintiff's causes of action. *CYBERsitter, LLC v. People's Republic of China*, 2010 WL 4909958 *4-5 (C.D. Cal. 2011).[3] The other case, *In re Montage Tech. Grp. Ltd. Sec.*

---

[3] Plaintiffs appear to have mistakenly cited *CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 969-971 (C.D. Cal. 2011). This opinion did not address whether China was an

5

*Litig.*, 78 F. Supp. 3d 1215, 1226-27 (N.D. Cal. 2015), held China is not an adequate forum for a particular kind of case–"a securities fraud case involving securities purchased on a United States market"–relying on an expert who testified Chinese securities laws do not govern transactions conducted on U.S. markets. *Id.* at 1222-23. Plaintiffs offer no evidence about China's laws, let alone comparably specific testimony tailored to Plaintiffs' claims. (*See* Dkt. No. 41 at 10-11, Dkt. No. 42 at 6-7.) To the extent *Montage* more broadly suggests Chinese courts cannot remedy competitive harms felt in other markets, this does not change the analysis above that Plaintiffs have at least "some potential avenue for redress" for harms felt in China. *Ceramic Corp.*, 1 F.3d at 949.

So, Defendants have met their burden of showing China is an adequate forum.

**B.  Private and Public Interests Strongly Weigh in Favor of Dismissal**

There are seven private interest factors in a forum non conveniens inquiry:

> (1) the residence of the parties and the witnesses;
> (2) the forum's convenience to the litigants;
> (3) access to physical evidence and other sources of proof;
> (4) whether unwilling witnesses can be compelled to testify;
> (5) the cost of bringing witnesses to trial;
> (6) the enforceability of the judgment; and
> (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Lueck*, 236 F.3d at 1145. Here, every private factor militates in favor of dismissal. The parties are residents of China or Hong Kong, not the United States, which makes Plaintiffs' chosen forum inconvenient and increases the cost of bringing witnesses to trial. Defendants' bank accounts, employees, executives, and assets are all in China and Hong Kong, which makes it difficult to enforce a judgment, hinders access to evidence and proof, and prevents parties from compelling witnesses to testify under Chinese laws. (Dkt. No. 38-1 ¶¶ 3-5, Dkt. No. 39-14 ¶¶ 3-4, 8-10.)

Plaintiffs' weighing of the private factors is unpersuasive. Plaintiffs assert "much of the key proof is documentary and electronic in nature" (Dkt. No. 41 at 12-13), yet offer no solution for compelling unwilling witnesses to produce or testify about that evidence, let alone pay the cost of

---

adequate forum. *See id.* A prior opinion in the case, cited above, addressed that question.

bringing those witnesses to trial.  Plaintiffs then emphasize there will be "evidence regarding U.S. commercial activity and U.S. market harm," (*id.* at 13), but that argument is neutral as to a preferred forum because presumably both forums have roughly equal access to market evidence.

Additionally, Plaintiffs suggest the private interests do not warrant dismissal because Defendants "purposefully target[ed] the U.S. market" through the updf.com website and unspecified "commercial transactions."  (*Id.*)  The Court disagrees.  Neither Defendant has physical locations, employees, executives, bank accounts, or assets in the United States, which suggests Defendants did not purposefully target the U.S.  There is no indication Defendants sought out a California audience, either; the only concrete example of either Defendant engaging a California-based entity was to host its website on CloudFlare's servers.  But, again, that website is not specifically directed at American audiences; it is "available globally and in countless languages."  (Dkt. No. 38-1 ¶ 12.)  The location of a server, which is used only by nearby customers, does not outweigh every other private interest that favors dismissal.

Finally, the public factors are:

> (1) the local interest in the lawsuit,
> (2) the court's familiarity with the governing law,
> (3) the burden on local courts and juries,
> (4) congestion in the court, and
> (5) the costs of resolving a dispute unrelated to a particular forum.

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006).  These factors, too, counsel in favor of dismissal.  California has little interest in adjudicating a dispute between foreign entities over globally used software.  While the Court is familiar with false advertising and unfair competition claims, the Court's already-high caseload would be further burdened by litigating a dispute where a significant amount of evidence is located outside the United States and/or in Chinese language.  (Dkt. No. 38-1 ¶ 4; Dkt. No. 39-14 ¶ 9.)

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motions and DISMISSES Plaintiffs' suit, in its entirety, under the doctrine of forum non conveniens.  Defendants have shown China is an adequate forum because Plaintiffs at least have some remedy for their claims, and the private and public factors strongly weigh in favor of dismissal.

This Order disposes of Docket Nos. 38 and 39.  A separate judgment will be entered.

**IT IS SO ORDERED.**

Dated: January 14, 2026

JACQUELINE SCOTT CORLEY
United States District Judge